IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DAVID LINWOOD PULLEN,** | |
| Petitioner, | Case No. 7:14CV00211 |
| v. | **OPINION** |
| **DIRECTOR, VA DEPT. OF CORR.,** | By: James P. Jones |
| | United States District Judge |
| Respondent. | |

*David Linwood Pullen, Pro Se Petitioner; Christopher P. Schandevel, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Respondent.*

David Linwood Pullen, a Virginia inmate proceeding pro se, filed this action as a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Upon review of the record, I conclude that the respondent's Motion to Dismiss must be granted.

I.

Pullen stood trial before a jury in the Circuit Court of Rappahannock County, Virginia, and was convicted of first degree murder, possession of a firearm after having been convicted of a felony, and use of a firearm while committing murder. In addition, Pullen pleaded guilty to a second count of possession of a firearm after having been convicted of a felony. The court sentenced Pullen to a total of 33 years imprisonment with the Virginia Department of Corrections, with five years suspended, and an additional six months in jail.

Pullen sought an appeal to the Court of Appeals of Virginia, which denied his petition. The Supreme Court of Virginia thereafter refused Pullen's petition for appeal and on March 8, 2013, denied his petition for rehearing. Pullen did not pursue certiorari review in the Supreme Court of the United States nor did he file a state habeas petition.

On April 22, 2014, Pullen delivered his federal habeas petition to the prison mailroom for mailing to the court.[1] The petition asserts that Pullen's trial counsel was ineffective by failing to: (a) adequately question Robert Alcock about Pullen's fear of the victim, Wayne Jenkins; (b) call Clyde Pullen and Kathy Pullen as witnesses; and (c) request a jury instruction as to second-degree murder. The respondent has moved to dismiss Pullen's claims as procedurally defaulted because he did not pursue available state court remedies and would now be barred under state law from doing so. Pullen has responded, making the matter ripe for disposition.

## II.

Absent a valid excuse, a state prisoner must exhaust his remedies in state court before seeking habeas corpus relief in federal court. 28 U.S.C. § 2254(b). As stated, Pullen failed to submit his ineffective assistance claim to any state court

---

[1] Pursuant to Rule 3(d) of the Rules Governing 2254 Cases, a prisoner's pleading is considered filed on the day when he deposited it in the prison's internal mailing system.

before filing his federal petition. Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met," because "a state procedural rule would bar consideration" of the claim now. *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006). Specifically, if Pullen now returned to state court to pursue his habeas claims, they would be time barred under Virginia Code § 8.01-654(A)(2), which requires that habeas claims be filed within one year from the "final disposition of the direct appeal in state court."

Pullen's direct appeals in the state courts concluded when the Supreme Court of Virginia refused his petition for rehearing on March 8, 2013. Under section 8.01-654(A)(2), he then had until March 10, 2014, to seek state habeas relief. Pullen failed to file his state habeas claims within this period, and Virginia law would now bar review of those claims as untimely. I find that the application of the state time bar would be an independent and adequate state-law ground for disposition of Pullen's claims. *See, e.g., Speller v. Johnson*, No. 3:09CV463, 2012 WL 1038624, at *7 (E.D. Va. Mar. 27, 2012) (finding that state court application of § 8.01-654(A)(2) barred federal habeas review and citing other cases). Thus, federal review of Pullen's defaulted claims is also barred, "unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will

result in a fundamental miscarriage of justice."[2]  *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

"'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753 (emphasis in original).  Generally, a showing of cause rests on "some objective factor external to the defense [which] impeded [a petitioner's] efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Pullen asserts that library access problems should serve as cause for his default.  Even taking the evidence in the light most favorable to Pullen, I find no merit to his argument.

As stated, Pullen's deadline to file a timely state petition expired on March 8, 2014, while Pullen was incarcerated at Sussex II State Prison.  During the preceding week, he anticipated completing and submitting his state habeas petition.  On March 3, 2014, however, the prison went on lockdown and remained in that status for a month, with library access allowed only upon request related to a court

---

[2]  Pullen makes no showing that he is actually innocent of the crimes for which he stands convicted and sentenced, as required to excuse his default through the miscarriage of justice exception.  *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (finding that miscarriage of justice exception to procedural default requires petitioner to show that "it is more likely than not that no reasonable juror would have convicted him" of the underlying crime if jurors had received specific, reliable evidence not presented at trial).

-4-

deadline.³ Pullen claims that on March 4, he submitted a request to use the law library, but never received a response and was not allowed access to the law library before his state habeas time limit expired on March 8. Because Virginia Code § 8.01-654(A)(2) does not include any tolling provisions, Pullen believed that filing a state petition would be futile and proceeded to file this federal habeas petition instead.

At the most, the prison lockdown impeded Pullen's habeas litigation efforts for the last week of his one-year filing period. Pullen does not point to any external factor that prevented him from preparing a timely state habeas petition within the eleven months preceding the prison lockdown. As he provides no basis for finding that this lengthy delay was not attributable to him, I cannot find that his evidence of temporary library problems in the week before his deadline constitutes cause as required under *Coleman* and *Murray* for his failure to file a state habeas petition.

Citing *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), Pullen next argues that his lack of counsel to assist him with a state habeas petition should serve as cause to excuse his default. This argument has no merit.

---

³ The respondent's evidence verifies the 30-day lockdown, beginning on March 3, 2014. The prison's Operations Manager states, however, that during this period, "the law library was open to all men who requested to prepare documents for their deadlines. Pullen did not request to use the law library during the lockdown period." (Resp't's Br. Supp. Mot. Dismiss Ex. D, ECF No. 8-4.)

In *Martinez*, the Supreme Court recognized a narrow exception to the well-established rule that an attorney's errors in a post-conviction collateral proceeding do not constitute cause to excuse a procedural default. *Id.* at 1315. The Court held that when a prisoner's first opportunity under state law to raise a claim of ineffective assistance by trial counsel is in his "initial-review collateral proceedings," the state's failure to appoint him counsel during such proceedings (or habeas counsel's deficient representation) may establish cause for the procedural default of a substantial claim of deficient performance by trial counsel. *Id.*

Pullen first argues that he is entitled to appointed counsel to assist him now in pursuing a state habeas action. He is mistaken. The *Martinez* decision expressly declined to recognize a constitutional right to counsel during initial collateral review proceedings. *Id.*[4]

---

[4] The *Martinez* Court stated as follows:

*Coleman* had suggested, though without holding, that the Constitution may require States to provide counsel in initial-review collateral proceedings because "in [these] cases . . . state collateral review is the first place a prisoner can present a challenge to his conviction." *Id.*, at 755, 111 S. Ct. 2546. As *Coleman* noted, this makes the initial-review collateral proceeding a prisoner's "one and only appeal" as to an ineffective-assistance claim, *id.*, at 756, 111 S. Ct. 2546 (emphasis deleted; internal quotation marks omitted), and this may justify an exception to the constitutional rule that there is no right to counsel in collateral proceedings. *See id.*, at 755, 111 S. Ct. 2546; *Douglas v. California*, 372 U.S. 353, 357,

Moreover, because Pullen did not initiate a state habeas proceeding, I find that he cannot benefit from the *Martinez* exception to default of his claims that trial counsel was ineffective.

> The Supreme Court was adamant that its holding in *Martinez* created a "limited" and "narrow" exception to the rule established in *Coleman,* 132 S. Ct. at 1315, 1319. Because the Court spoke only of applying its exception to an "initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel[,]" We conclude that the *Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever. *Id.* at 1318. Were it otherwise, the *Martinez* rule could potentially apply to any defendant who failed to petition for state collateral review.

*Jones v. Pa. Bd. of Prob. & Parole*, 492 F. App'x 242, 246-47 (3d Cir. 2012) (unpublished); *see also Anderson v. Clarke*, No. 2:13-cv-223, 2014 WL 1203032, at *5 (E.D. Va. Mar. 24, 2014) (applying *Jones* to find *Martinez* exception inapplicable where petitioner did not pursue collateral review in state court). Pullen also raises no substantial constitutional claim, another prerequisite for the *Martinez* exception to default.[5]

---

    83 S. Ct. 814, 9 L.Ed.2d 811 (1963) (holding States must appoint counsel on a prisoner's first appeal).

    This is not the case, however, to resolve whether that exception exists as a constitutional matter.

132 S. Ct. at 1315.

[5] All of Pullen's federal habeas claims fault counsel for failing to properly present a justification defense, based on evidence that Pullen was fearful of the victim and had expressed that fear to others before the murder. As the respondent notes in its brief,

## III.

For the these reasons, I conclude that Pullen's habeas claims of ineffective assistance of counsel are procedurally barred from federal habeas review and he has not shown cause for that default. Accordingly, I will grant the Motion to Dismiss.

A separate Final Order will be entered herewith.

DATED: January 13, 2015

/s/ James P. Jones
United States District Judge

---

The Court of Appeals of Virginia, in affirming the trial court's refusal of Pullen's requested jury instruction on excusable self-defense, concluded as follows:

> Here, even in the light most favorable to [Pullen], the evidence established that after threatening to harm the victim earlier that day, [Pullen] went to his shed, got a loaded rifle, walked into the victim's bedroom, pointed the gun at the victim, and called the victim's name. When the victim attempted to get up and approach, appellant fired three times. Appellant did not attempt to lower the rifle, withdraw from the room, or indicate a desire for peace. Instead, he armed himself and followed through on his earlier threat and shot an unarmed, defenseless man.

(Resp't's Br. Supp. Mot. Dismiss 8, n.3, ECF No. 8.) In addition, "'trajectory evidence showed that the shots that hit the victim also penetrated the headboard of his bed, suggesting he was not standing at the time he was shot.'" *Id.* In light of these facts, the additional evidence Pullen claims counsel could have elicited falls far short of establishing a viable theory of excusable self-defense or second-degree murder.

-8-